**SO ORDERED.**

**SIGNED this 14 day of January, 2013.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

**IN RE:**

| | |
|---|---|
| **TAMMY LYNN BOYD,** | **CHAPTER 13** |
| | **CASE NO. 12-06306-8-RDD** |
| **DEBTOR** | |

**ORDER**

Pending before the Court is the Trustee's Motion to Dismiss filed by the Chapter 13 Trustee (the "Trustee") on October 16, 2012, the Memorandum of Law in Support of Trustee's Objection to Debtors' Confirmation and Motion to Dismiss filed by the Trustee on December 3, 2012, the Response to Trustee's Motion to Dismiss and Request for Hearing filed by Tammy Boyd (the "Debtor") on October 18, 2012, and the Supplemental Response to Trustee's Objection to Confirmation and Motion to Dismiss filed by the Debtor on December 9, 2012. The Court conducted a hearing on this matter on December 10, 2012 in Raleigh, North Carolina.

The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on September

4, 2012. Richard M. Stearns was duly appointed as the Trustee, and has filed a Motion to Dismiss[1] for failure to file a confirmable plan. The Debtor has filed the required Schedules A through J, a Statement of Financial Affairs, a master Mailing Matrix, and a Chapter 13 Statement of Income and Calculation of Commitment Period and Disposable Income (hereinafter the "B22C"). After completing Parts I and II of the B22C, the Debtor calculated her household income to be below the median family income in North Carolina for comparably sized households and listed no disposable income from B22C.

The Debtor filed a proposed Chapter 13 plan pursuant to 11 U.S.C. § 1321 (the "Plan"). The plan proposes to pay $96.00 for fifty-seven (57) months. The total of plan payments is $5,472.00. Debtor is requesting $2,800.00 in attorneys' fees. Schedule F shows that the Debtor has approximately $4,952.38 in unsecured claims. Schedule I shows a combined average monthly income of $774.00. Schedule J shows average monthly expenses of $667.00 leaving a monthly net

---

[1] 11 U.S.C. § 1325(b)(1) requires the Trustee to object to confirmation of the Debtor's plan. The Court will treat the Motion to Dismiss as an objection to confirmation of the plan.

income of 107.00.[2]  The Debtor has non-exempt equity in a 2010 Hyundai Elantra of $2,975.00.[3]

The Debtor's plan contains language commonly referred to as "early termination language,"

and states:

> This Chapter 13 Plan will be deemed complete and shall terminate and a discharge shall be entered, at the earlier of the expiration of 36 months or the payment of: (1) The following claims proposed to be paid "inside" the plan, to the extent "allowed": (i) Arrearage claims on secured debts, (ii) Secured claims (not included those to be paid "outside" the plan), (iii) dividend to unsecured, non-priority creditors, if any is required by 11 U.S.C. § 1325(b). (For purposes of 11 U.S.C. 1325(b)(1)(B), "unsecured creditors" shall be deemed to mean all unsecured creditors, including both priority and non-priority unsecured creditors. Joint debts secured by consumer goods shall be paid in full.

---

[2]

| Proposed Plan | Unsecured Debt | Dividend to Unsecured Creditors | Early Termination Language? | Form B22C | Sch. I minus Sch. J |
|---|---|---|---|---|---|
| a. $96 x 57 months = $5,472.00 b. Attorney's Fees = $2,800 c. Trustee's Commission = $328.36 d. Payment to Unsecured Creditors = $2,343.64 without early termination; $0 with early termination | $4,952.38 | 2.4% | Yes - Included in proposed plan | N/A (below-median) | $107.00 |

[3]The Debtor's schedules show ownership of a 2010 Hyundai Elantra with a fair market value of $11,475.00. $8,500.00 in value has been claimed as exempt, leaving $2,975.00 in equity.

With the early termination language, the plan proposes a 0% payout to unsecured

creditors.  In addition, the early termination language does not provide for payments required to

be made to meet the liquidation or best interest of the creditors test set out in 11 U.S.C. §

1325(a)(4).[4]  For the following reasons, the plan as filed cannot be confirmed.

## DISCUSSION

The issue before the Court is whether this debtor, who has zero or less disposable income,

as determined by Form B22C, may obtain confirmation of a Chapter 13 plan, which in effect will

terminate before the respective applicable commitment period when the plan proposes to discharge

substantial amounts in unsecured debt and pay only the Trustee commission and the debtor's

attorney fees.

The Court shall confirm a Chapter 13 plan if the provisions of 11 U.S.C. § 1325(a) are met.

In cases where an objection to confirmation has been made by either the trustee or an unsecured

creditor the court may not confirm a plan unless:

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1).

11 U.S.C. §1325(b)(4) defines "applicable commitment period" as

---

[4] Pursuant to § 1325(a)(4) the court shall confirm a plan if,

the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

(A) subject to paragraph (B), shall be –
    (i) 3 years; or
    (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than –
        (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
        (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
        (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $625 per month for each individual in excess of 4; and
(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

The phrase "projected disposable income" is not defined in the Bankruptcy Code. The Code

defines "disposable income" as "current monthly income to be received by the debtor[5] . . . less

amounts reasonably necessary to be expended . . ." 11 U.S.C. § 1325(b)(2). The phrase "amounts

reasonably necessary to be expended" includes the full amount needed for "maintenance or support,"

for a debtor whose income is below median for his or her state, but for an above-median-income

---

[5]The term "current monthly income" –
    (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on–
        (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
        (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
    (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent) . . . .
11 U.S.C. § 101(10A)

debtor, only certain expenses are included. *Hamilton v. Lanning*, 130 S.Ct. 2470 177 L.Ed.2d 23 (2010).

This Court has previously discussed "projected disposable income" and its interplay with § 1325(b)(2) in *In re Musselman*, 379 B.R. 583 (Bankr. E.D.N.C. 2008)[6] and in *In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006) (finding that to calculate a Chapter 13 debtor's projected disposable income, "one simply takes the calculation mandated by § 1325(b)(2) and does the math," while recognizing the debate and split of authority among bankruptcy courts).

Subsequent to the decisions in *Musselman v. eCast Settlement Corp.*, 394 B.R. 801, 814 (E.D.N.C. 2008) and *In re Alexander,* 344 B.R. 742, 749 (Bankr. E.D.N.C. 2008) the Supreme Court of the United States has interpreted the phrase "projected disposable income" in *Hamilton v.*

---

[6]In *In re Musselman*, the Chapter 13 debtor's Form B22C indicated that he was an above-median income debtor and had a monthly disposable income of negative $255.80. The debtor proposed plan payments for 55 months. eCast Settlement Corporation, the holder of two unsecured claims against the debtor, objected to the terms of the plan insisting the debtor's plan should be for five years or 60 months.

The Bankruptcy Court held that the length of the applicable commitment period is tied to the above or below-median current monthly income of the debtor, not to the projected disposable income of the debtor. The applicable commitment period must be three years for below-median income debtors or five years for above-median income debtors, unless debtors pay all allowed unsecured claims in full, prior to the expiration of the applicable commitment period. The above-median income debtor must propose a plan for payments over a period of five years, unless unsecured creditors are paid in full over a shorter period. Both the debtor and the creditor appealed the bankruptcy court's order to the District Court.

The District Court reversed the bankruptcy court's decision as to the length of the debtor's plan. The District Court held that the applicable commitment period time requirements do not apply to above-median debtors with zero or negative "projected disposable income." *Musselman v. eCast Settlement Corp.*, 394 B.R. 801, 814 (Bankr. E.D.N.C. 2008). Further, after analyzing both the multiplicative approach, which finds "'projected disposable income' intimately related to 'disposable income'" as identified in *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006), and the "forward-looking approach," which "require[s] a forward looking inquiry to determine what a debtor's 'projected disposable income' will be during the pendency of the chapter 13 plan," the District Court held that "projected disposable income" is equivalent to the debtor's "disposable income" as defined in 11 U.S.C. § 1325(b)(2). *Id*. at 808-13.

6

*Lanning*, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010). There, the above-median-income Chapter 13 debtor, in the six months preceding the bankruptcy filing, received a "one-time buyout from her former employer" greatly increasing the debtor's average monthly income for the sixth month period preceding the filing date. *Id.* at 2470. Post-petition, however, the debtor's income was drastically reduced with her new job. *Id.* Her monthly expenses calculated pursuant to § 707(b)(2), were $4,228.71 and her "disposable income" as reported on Form B22C was $1,114.98. On her Schedule I, she reported an income below the state median of $1,922.00 per month and on her Schedule J she reported actual monthly expenses of $1,722.97, resulting in a monthly disposable income of $149.03. *Id.* The debtor filed a plan that required a $144.00 monthly payment for thirty-six (36) months. *Id.* The trustee objected to confirmation on the ground that the debtor was not committing all of her projected disposable income to the repayment of creditors. *Id.* The trustee advocated for a mechanical approach to calculating projected disposable income, which involves multiplying disposable income, as calculated on Form B22C, by the number of months in the commitment period. *Id*. The bankruptcy court endorsed the debtor's proposed monthly payment of $144.00 but required a sixty (60) month plan period. *Id.* at 2471. The trustee appealed the order to the Tenth Circuit Bankruptcy Appellate Panel, which affirmed. *Id*. The trustee then appealed to the Tenth Circuit Court of Appeals, which affirmed. *Id*. The Supreme Court granted certiorari. *Id.*

The Supreme Court held that when a bankruptcy court calculates a Chapter 13 debtor's projected disposable income, the court may "account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 2478. In coming to this conclusion the Supreme Court discussed the phrase "projected disposable income." In its discussion, the Court noted

7

the term 'projected' is not defined, and in ordinary usage future occurrences are not 'projected' based on the assumption that the past will necessarily repeat itself. For example, projections concerning a company's future sales or the future cash flow from a license take into account anticipated events that may change past trends.

*Id.* at 2471.  The Court noted "[t]here is no dispute that [the debtor] would in fact receive far less than [the calculated amount] per month in disposable income during the plan period, so [the trustee's] projection does not accurately reflect 'income to be received' during that period." *Id.* at 2474.  The Court recognized that Congress rarely uses the term "projected" to refer to simple multiplication, and "when Congress wishes to mandate simple multiplication, it does so unambiguously—most commonly by using the term 'multiplied.'" *Id.* at 2472.  The Court reasoned that the mechanical approach "clashes repeatedly with the terms of 11 U.S.C. § 1325," noting that the language of § 1325(b)(1)(B) "'to be received during the applicable commitment period' strongly favors the forward-looking approach," and that the mechanical approach "effectively reads this phrase out of the statute when a debtor's current disposable income is substantially higher than the income that the debtor predictably will receive during the plan period." *Id.* at 2474.[7]

Further, the Court noted that § 1325(b)(1) directs bankruptcy courts to determine projected disposable income as of the *effective date* of the plan, rather than the filing date of the plan.  The Court recognized that not considering the debtor's changed circumstances would be inconsistent with the language of 11 U.S.C. § 1325 and would produce "senseless results" such as creditors being denied "payments that the debtor could easily make," or denying "the protection of Chapter 13 to debtors who meet the chapter's main eligibility requirements." *Id.* at 2475-2476.  The Court noted

---

[7]The Supreme Court's adoption of the forward-looking approach effectively reverses the holding of the United States District Court for the Eastern District of North Carolina in *Musselman v. eCast Settlement Corp.*, which adopted the multiplication or mechanical approach, where disposable income and projected disposable income are the same. *See supra* note 5.

that "[i]n cases in which the debtor's disposable income is higher during the plan period, the mechanical approach would deny creditors payments that the debtor could easily make." *Id.* at 2476. The Court endorsed a "forward-looking approach" allowing the bankruptcy court or the trustee to take into consideration changes in a debtor's income that are "known or virtually certain at the time of confirmation." *Id.* at 2478.

Following *Lanning,* the Supreme Court in *Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011), held a debtor may not deduct on form B22C an IRS Local Standard deduction for an expense which the debtor will not incur during the life of the plan. *Id.* at 725. In making its determination the Court noted that an "expense amount is 'applicable' within the plain meaning of the statute when it is appropriate, relevant, suitable, or fit." *Id*. at 724. The Court noted that "[i]f a debtor will not have a particular kind of expense during his plan, an allowance to cover that cost is not 'reasonably necessary' within the meaning of the statute." *Id.* at 725. The Court cited *Lanning*, when commenting on Congress' intent in passing BAPCPA:

> Congress designed the means test to measure debtors' disposable income and, in that way, 'to ensure that [they] repay creditors the maximum they can afford.' H.R. Rep., at 2. This purpose is best achieved by interpreting the means test, consistent with the statutory text, to reflect a debtor's ability to afford repayment. Cf. *Hamilton*, 560 U.S. at ___, 130 S.Ct., at 2475-2476 (rejecting an interpretation of the Bankruptcy Code that 'would produce [the] senseless resul[t] of 'deny[ing] creditors payments that the debtor could easily make'). Requiring a debtor to incur the kind of expenses for which he claims a means-test deduction thus advances the BAPCPA's objectives.

*Id.*

Subsequent to the Supreme Court's decision in *Lanning* and *Ransom*, other courts have followed suit allowing for accounting of changes in both income and expenses when determining "projected disposable income." The Fourth Circuit in *Morris v. Quigley* addressed the issue of

"whether a debtor's 'projected disposable income' must be equal to the debtor's 'disposable income' for purposes of satisfying § 1325(b)(1)(B), or whether the projected disposable income should reflect changes that have occurred or that will occur and that are known as of the date of confirmation." 673 F.3d 269, 272 (4th Cir. 2012).   Specifically, the court addressed whether "projected disposable income" should take into account the debtor's intention to surrender two vehicles to her secured creditors.  *Id.* at 270. The Fourth Circuit relied on *Lanning* and noted the Supreme Court adopted a "forward-looking approach" and held that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 273 (citation omitted). The court found that "failing to account for [known decreases in a debtor's expenses] and thereby denying the unsecured creditors payments that the [d]ebtor clearly could make would be just the sort of 'senseless result[]' that the *Lanning* Court rejected." *Id.* at 274 (citing *Hamilton v. Lanning*, 130 S.Ct. 2464, 2475, 177 L.Ed.2d 23 (2010)).  The debtor in the case attempted to distinguish *Lanning* by arguing that *Lanning* involved a change in income while the debtor's case involved a change in expenses. *Id.* The court found that the principles articulated in *Lanning* applied equally to both situations. *Id.*

The Bankruptcy Court for the Eastern District of North Carolina has recently commented on the *Lanning, Ransom*, and *Quigley* opinions and noted that

> taken together, this recent line of cases departs from the strict formulaic approach to the means test and takes into account what is likely to occur in the future. Applying this reasoning furthers the purpose of the means test, "which was intended to 'ensure that those who can afford to repay some portion for their unsecured debts be required to do so.'"

*In re Sterrenberg*, Case No. 11-08543-8-RDD, 2012 WL 1835183, at *5 (Bankr. E.D.N.C. May 18, 2012) (citing *In re Harris*, 353 B.R. 304, 309 (Bankr. E.D. Okla. Oct. 13, 2006); *In re Krawczyk*,

Case No. 11-09596-8-JRL, 2012 WL 3069437 at *5 (Bankr. E.D.N.C. July 27, 2012).

The same principles laid out in *Lanning, Ransom*, and *Quigley*, have been applied when determining

> whether the income that becomes available after the debtors have fully repaid their 401(k) loans (which is allowed by 11 U.S.C. § 1322(f)) is "projected disposable income" to be paid to the unsecured creditors or whether the income can be used to begin making voluntary contributions to the debtors' 401(k) plans and deemed excludable from both disposable income and property of the estate under 11 U.S.C. § 541(a)(1) and (b)(7).

*Seafort v. Burden*, 669 F.3d 662, 663 (6th Cir. 2012). The Sixth Circuit held that "income made available once Debtors' 401(k) loan repayments are fully repaid is properly committed to the debtors' respective Chapter 13 plans for distribution to the unsecured creditors and may not be used to make voluntary retirement contributions." *Id*. at 674. While the Sixth Circuit relied on an analysis of §§ 541(b)(7), 541(a)(1), and 1306(a) to reach its decision, the court did cite to the Congressional intent and purpose of BAPCPA "to ensure that debtors devote their full disposable income to repaying creditors and maximizing creditor recoveries." *Id.* at 674 (citations omitted).

While the Supreme Court did not address the definition of the phrase "applicable commitment period" in *Lanning*, other courts have cited the Supreme Court decision to support a temporal interpretation of the "applicable commitment period."  The Eleventh Circuit in *In re Tennyson*, 611 F.3d 873 (11th Cir. 2010), held that the applicable commitment period mandates a minimum duration for an above-median income debtor's Chapter 13 plan. *Id.* at 874.  The facts of *In re Tennyson* involved an above-median income debtor whose Form B22C indicated that he had negative disposable income. *Id*. at 875.  Using the multiplier approach, this debtor determined that he had no applicable commitment period since he had no projected disposable income. *Id.* The

11

debtor proposed a three-year plan and the Chapter 13 Trustee objected. *Id.*  The Eleventh Circuit

relied on *Lanning's* rationale to support its holding that the provisions of Title 11 setting out the

applicable commitment period require an above-median income debtor to remain in a Chapter 13

bankruptcy for five (5) years.  *Id.* at 878.  The Circuit Court reasoned that "*Lanning* does not directly

comment on the definition of 'applicable commitment period' but what it does indicate is that

§1325(b) is not a strict mechanical formula existing in a vacuum." *Id.* With such a flexible approach,

the Eleventh Circuit concluded that "in order for 'applicable commitment period' to have any

definite meaning, its definition must be that of a temporal term derived from § 1325(b)(4)." *Id.* at

879. The Eleventh Circuit did not make a distinction between positive and negative disposable

income and applied the temporal approach to all debtors. *Id.*

The Sixth Circuit in *Baud v. Carroll* noted that in *Lanning,* the Supreme Court relied on the

"lack of explicit multiplier language in §1325(b)(1)" to adopt a forward-looking approach and that

a similar lack of multiplier language supports a temporal reading of §1325(b).  *Baud v. Carroll*, 634

F.3d 327, 339 (6th Cir. 2011).  There, the Sixth Circuit relied on the language in *Lanning* and

*Ransom* to require a five (5) year applicable commitment period upon the debtor whose disposable

income was less than zero. The court stated:

> This brings us to the issue of whether there is an exception to the temporal
> requirement set forth in § 1325(b) for debtors with zero or negative projected
> disposable income. . . .
>
> In addressing this difficult issue, we begin once again with the language of the statute
> itself. . . .  Under the express language of § 1325(b)(4), the applicable commitment
> period does not depend on the amount of the debtor's projected disposable income.
> To the contrary, the applicable commitment period depends on the current monthly
> income of the debtor and the debtor's spouse combined. . . . Accordingly, we
> conclude that the better reading of § 1325(b) is that the temporal requirement of the
> applicable commitment period applies to debtors facing a confirmation objection

even if they have zero or negative disposable income.

*Id.* at 350-351 (emphasis added).

Relying on *Lanning* and *Ransom*, the Sixth Circuit stated:

[A]s the Supreme Court recognized in both *Ransom* and *Lanning,* the legislative history makes clear that the focus of Congress in enacting BAPCPA was on maximizing the amount of disposable income that debtors would pay to creditors. And there are numerous circumstances in which disposable income might become available to the Appellees and to other debtors after confirmation, even those who have zero or negative projected disposable income as of confirmation. . . .

*Id.* at 356.

Courts that have applied the mandatory applicable commitment period to debtors with zero or negative projected disposable income have concluded that this approach would best serve BAPCPA's goal of ensuring that debtors repay creditors the maximum amount they can afford. *See*, e.g., *In re Tennyson*, 611 F.3d 873, 879 (11th Cir. 2010); *In re Moose*, 419 B.R. 632, 635 (Bankr. E.D.Va. 2009). Even pre-BAPCPA case law points in favor of a forward-looking approach. In *Lanning v. Hamilton,* the Supreme Court looked to pre-BAPCPA practice and concluded that "we 'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.'" *Hamilton v. Lanning*, 130 S.Ct. 2464, 2473, 177 L.Ed.2d 23 (2010) (quoting *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Electric Co.*, 549 U.S. 443, 454, 127 S.Ct. 1199 (2007)). If the Court allowed above and below-median income debtors to exit bankruptcy upon payment of their secured claims, unsecured creditors would not be able to capitalize on any subsequent increase in the debtors' income. *See In re King*, 439 B.R. 129, 139 (Bankr. S.D.Ill., 2010).

Prior to BAPCPA, the Bankruptcy Code required that in order to be confirmed, a Chapter 13

plan had to be proposed for a minimum duration of three (3) years unless unsecured claims were paid in full in a shorter period of time.  11 U.S.C. §1325(b)(1)(2004).   Before BAPCPA, the three (3) year period announced in §1325(b)(1) operated as a temporal requirement.  *See Fridley v. Forsythe* (*In re Fridley*), 380 B.R. 538, 544 (9th Cir. B.A.P. 2007).   After BAPCPA, the applicable commitment period in §1325(b)(1) operates as a temporal requirement.  *See Baud v. Carroll*, 634 F.3d 327, 341 (6th Cir. 2011).  The addition of the phrase "to unsecured creditors" in §1325(b) does not show a clear indication that Congress intended the courts to depart from their pre-BAPCPA practice of declining to confirm plans of less than the required length.  *Id.* at 342.

BAPCPA's core purpose is to ensure that debtors devote their full disposable income to repaying creditors and maximizing creditor recoveries.  *See Ransom v. FIA Card Services*, 131 S.Ct. 716, 725, 178 L.Ed.2d 603 (2011); *see Seafort v. Burden*, 669 F.3d 662, 674 (6th Cir. 2012); *Baud v. Carroll,* 634 F.3d 327, 343 (6th Cir. 2011).

Congress intended to require higher income debtors to pay 100% of unsecured claims or make payments for five (5) years.  *Coop v. Frederickson,* 375 B.R. 829, 837 (8th Cir. B.A.P. 2007) (Federman, J., dissenting).  Looking at legislative history, the House Report on §1325(b) shows that the applicable commitment period is a durational requirement. *Id.*   There are numerous circumstances in which disposable income might become available to the debtors after confirmation, even for those who have zero or negative projected disposable income.  The Bankruptcy Court for the District of Kansas noted:

> [A] negative disposable income number on Form B22C does not conclusively establish the debtor has no disposable income to be received in the Applicable Commitment Period. *Indeed, a feasible plan payment proposal rebuts the presumption that Form B22C alone determines disposable income.* A negative number on Form B22C indicates a plan is not feasible. However, if the debtor can

propose a feasible plan payment, then the debtor has shown there is, in fact, disposable income, and the plan must last for five years if his income is above median. Debtors cannot have it both ways. If they want to rely exclusively on Form B22C with a negative disposable income number, then they cannot propose a feasible plan. On the other hand, a feasible plan payment commits debtors to a certain plan length, for the above-median income debtor, of no less than five years.

*In re Beckerle*, 367 B.R. 718, 721 (Bankr. D. Kan. 2007) (citations omitted) (emphasis added).

Additionally, the debtor's "disposable income" may not be the same as the debtor's actual "projected disposable income." *See In re Frederickson*, 545 F.3d 652, 659 (8th Cir. 2008). The debtor's actual expenses may be far less than the regional averages that are assumed in the calculation. *Id.* Thus, a debtor's "projected disposable income" is a forward-looking number and courts should look at things that are likely to occur in the future instead of relying on historical information. *Id.* Clearly, the Supreme Court and a majority of other courts are emphasizing a debtor's *actual ability to pay* in the future, rather than being tied to the mechanical formula, which often produces senseless results.

The United States District Court for the Eastern District of North Carolina addressed the applicable commitment period in *Musselman v. eCast Settlement Corp.*, 394 B.R. 801 (E.D.N.C. 2008). In *Musselman*, the court addressed the issue of whether the applicable commitment period as defined in § 1325(b)(4) determined the length of the plan regardless of the debtor's projected disposable income. The *Musselman* Court held that debtors who have no projected disposable income also have no applicable commitment period for purposes of § 1325(b). *Id.* at 814. While *Musselman* speaks directly to the issue at hand, it was decided pre-*Lanning*. Based on the Supreme Court decisions in *Lanning, Ransom*, and lower court's interpretations of these decisions, this Court is compelled to adopt a forward-looking approach to determine projected disposable income and

15

holds that the Applicable Commitment Period is a temporal requirement for all debtors. Had *Lanning*, *Ransom*, *Quigley*, *Sterrenberg*, *Baud* and *Tennyson* been decided prior to the District Court's holding in *Musselman* regarding the applicable commitment period, this Court concludes the District Court would not have reversed this Court's holding in *In re Musselman*. Surely if Congress intended for plans to contain these early termination provisions, Congress could have easily said so.[8] Therefore, if unsecured claims are not paid in full prior to thirty-six (36) months, the applicable commitment period of the plan must be thirty-six (36) months for below median income debtors and sixty (60) months for above median income debtors. 11 U.S.C. § 1325(b)(4)(B).

The adoption by the Supreme Court in *Lanning v. Hamilton* of the "forward-looking" approach is totally contradictory to the concept of a plan which includes an early termination provision. "Forward-looking" clearly sanctions and requires a debtor to commit projected disposable income to be received during the applicable commitment period, which means thirty-six (36) months for a below median income debtor, or sixty (60) months for an above median income debtor. *Lanning* proscribes that courts must account for changes in a debtor's income or expenses that are known or virtually certain at the time of confirmation. It is known or virtually certain at the time of confirmation that a debtor proposes to terminate the plan early after payment of attorney's fees and other designated claims. At that point in time, it is known or virtually certain that the debtor will continue to have the income to continue making payments for the duration of the thirty-six (36) or sixty (60) month period and will have the income available after attorney's fees are paid. This court has adopted the forward-looking approach which is the majority view of courts across the nation,

---

[8]For instance, § 1325(b)(4)(B), is the only statutorily permitted termination of the applicable commitment period prior to the expiration of the applicable commitment period, which provides unsecured creditors must be paid in full.

which requires a debtor to commit all projected disposable income for thirty-six (36) or sixty (60) months.  If disposable income is zero or less, the court must look to projected disposable income based on income minus expenses from Schedules I and J to determine what actual income or expenses are known or virtually certain at the time of confirmation.[9]  Therefore, it is known or virtually certain that attorney's fees will be paid in full prior to the expiration of the applicable commitment period, which frees up additional projected disposable income to be received during the applicable commitment period for the benefit of unsecured creditors.[10]

The Debtor's plan proposes to pay the general unsecured claims through the plan, pro rata to the extent that funds are available after disbursements are made to pay secured claims, arrearage claims, priority claims, and other specially classified claims.  With the early termination language, the Debtor's plan would be complete in thirty-one (31) months after payment of the Debtor's attorney's fees and Trustee's commissions.  The Court finds the early termination language included in the plan is void.  Because the Debtor is below median income, her applicable commitment period is thirty-six (36) months.  11 U.S.C. § 1325(b)(4)(A).  Additionally the early termination language does not provide an exception for payments which would be made to meet the requirements of 11 U.S.C. § 1325(a)(4).

Since the early termination language is void, in order to propose a confirmable plan, the

---

[9] In *Lanning v. Hamilton*, the debtor's payment of $144.00 per month was not the recalculated disposable income of B22C, but was the projected disposable income determined by taking income from Schedule I minus expenses of Schedule J. This is further confirmation that Schedule I and J may be used by the court to determine projected disposable income

[10] Payment of attorney's fees of $2,800.00 and Trustee's commissions of $168.00 would be complete in thirty-one months; five months short of the required applicable commitment period.

Debtor will have to propose to pay her projected disposable income of $96.00 per month for her applicable commitment period of thirty-six (36) months, plus pay additional sums to meet the liquidation test or best interests of the creditors test pursuant to 11 U.S.C. § 1325(a)(4). The Debtor has non-exempt equity of $2,975.00, which a Chapter 7 Trustee would be entitled to liquidate. Subtracting a 10% cost of liquidation would require a reduced amount of $2,677.50 to meet the liquidation test. Therefore, a confirmable plan would require payment of $2,800.00 in attorney's fees, $2,677.50 to meet the requirements of § 1325(a)(4), and a Trustee's commission of $328.65 for a total pay-in of $5,806.15. A plan of $97.00 for sixty (60) months with a total pay-n of $5,820.00 will be required.[11]

Pursuant to 11 U.S.C. § 1322(d)(2)(C), a plan proposed by a below median income debtor may not provide for a payment period longer than thirty-six (36) months, "unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years." 11 U.S.C. § 1322(d)(2)(C). Therefore, the Court authorizes the Debtor's plan to extend beyond thirty-six (36) months as the additional monthly payments are required for the Debtor to comply with 11 U.S.C. § 1325(a)(4). Should the Debtor decide to propose her plan for payments of $97.00 per month for sixty (60) months with no early termination language, her plan may be confirmed.

## CONCLUSION

Therefore, the Trustee's Motion to Dismiss is **DENIED**. The Trustee shall file his motion for confirmation for a plan of $97.00 per month for sixty (60) months with no early termination

---

[11] Schedule I minus J show projected disposable income of $107.00. Because of the Debtor's low monthly income a proposed payment of $97.00 will be sufficient.

language.[12]

**SO ORDERED.**

**END OF DOCUMENT**

---

[12]Since the plan will not terminate early, no analysis of the good faith requirements of 11 U.S.C. § 1325(a)(3), (7) is required at this time.